IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| HOLIDAY ISLE OWNERS ASSOCIATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 21-00512-JB-B |
| | ) | |
| CERTAIN UNDERWRITERS AT LLOYD'S LONDON, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This cause comes before the Court on Defendants' Motion to Compel Arbitration and Dismiss or Stay the Proceedings (Doc. 7), Plaintiff's Response in Opposition (Doc. 12), and Defendants' Reply (Doc. 13).  Defendants[1] move to compel their insured, Plaintiff Holiday Isle Owners Association, Inc. ("Plaintiff"), to arbitrate this dispute, and to dismiss this action, or in the alternative to stay this action pending completion of the arbitration process.

The Court, having carefully considered the Motion, the record, and relevant authorities, finds the Motion to Compel Arbitration (Doc. 7) is due to be granted for the following reasons.

I.    BACKGROUND

A.    Loss

Plaintiff, a non-profit entity, is the owners' association of the Holiday Isle Condominium (the "Property") located on Dauphin Island, Alabama.  Plaintiff alleges the Property, insured by

---

[1] Certain Underwriters at Lloyd's, London Subscribing to Policy No. AMR-37060-06 ("Underwriters"), Indian Harbor Insurance Company, QBE Specialty Insurance Company, General Security Indemnity Company of Arizona, United Specialty Insurance Company, Lexington Insurance Company, Safety Specialty Insurance Company, HDI Global Specialty SE ("HDI") and Old Republic Union Insurance Company (collectively "Defendants" or "Insurers").

Defendants, suffered damage (the "Loss") as a result of Hurricane Sally on or about September 16, 2020. (Doc. 7).  At the time of the Loss, the Property was insured under a surplus lines commercial property policy (the "Policy") with damages to be shared among the Defendants. (Doc. 1-2; Doc. 7).  After Hurricane Sally hit Dauphin Island, Plaintiff submitted a claim under the Policy for the Loss to the Property.  (*Id.*).  Defendants appointed a third-party claims administrator to inspect the Property.  (*Id.*).  The claims administrator determined the Loss, less depreciation, equaled $272,6720.58, which was below the applicable deductible of $872,991.20.  (*Id.*)  Plaintiff hired its own consultants who determined the loss to be $8,096,028.00, after applying the applicable deductible.  (*Id.*).  Plaintiff alleges it notified Defendants of its determination of the Loss calculations and Defendants rejected it.  (*Id.*).

### B.    Procedural History and Removal

As a result of the discrepancy between Plaintiff's loss calculations and Defendants' estimate, Plaintiff filed a complaint in Mobile County Circuit Court on September 14, 2021, asserting the following causes of action: "Declaratory Judgment" (Count I), "Breach of Contract" (Count II) and "Bad Faith" (Count III).  (Doc. 1-2; Doc. 7).  In Count I, Plaintiff alleged Paragraph C (the "Arbitration Clause") and Paragraph Y ("Suit Against Companies") are "inconsistent." (Doc. 1-2).  Plaintiff further alleged the Lloyd's Endorsement changed the Policy and did not preserve the Defendants' right to arbitrate.  (*Id.*).  As such, Plaintiff seeks a judgment declaring (1) that "the Amendatory Endorsement, Service of Suit Clause (U.S.A.) changes the [P]olicy and does not mention or reserve arbitration and therefore arbitration does not apply; (2) the language of the [P]olicy at issues which provides suit within 12 months of the loss is invalid and Alabama law applies as to when suit has to be brought; and (3) Plaintiff is entitled to $8,096,028.00 under the

[P]olicy as a result of damages resulting from Hurricane Sally occurring on 9/16/2020." (Doc. 1-2 at ¶21-28; Doc. 7 at ¶12).

On November 30, 2021, Defendants timely removed under 28 U.S.C. § 1441 and 9 U.S.C. § 205. (Doc. 1). Defendants are entities which are considered citizens of countries other than the United States. (*Id*.). Defendants assert there is a valid arbitration clause between the parties that falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, (also known as the "New York Convention"), and, thus, this Court has original jurisdiction pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 205. (*Id*.). *See also Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005) ("A case covered by the Convention confers federal subject matter jurisdiction upon a district court because such a case is 'deemed to arise under the laws and treaties of the United States.'") (quoting 9 U.S.C. § 203).

### C.   The Policy and Endorsement

Paragraph C of Section VII (Conditions) of the Policy contains the following Arbitration Clause: "All matters in difference between the Insured and the Companies (hereinafter referred to as 'the parties') in relation to this insurance, *including its formation and validity*, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out." (*See* Doc. 7-1 at 37) (emphasis added). The Arbitration Clause sets out the procedures for appointing an arbitrator and the tribunal. (*Id*.). The Arbitration Clause specifies the "seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance." (*Id*.). Lastly, the "award of the Arbitration Tribunal shall be in writing and binding upon the parties who covenant to carry out the same. If either of the parties should fail to carry out any award the other may *apply for*

*its enforcement to a court of competent jurisdiction in any territory in which the party in default is domiciled or has assets or carries on business.*" (*Id.*) (emphasis added).

Paragraph V ("Settlement of Claims") of Section VII of the Policy further specifies that "[t]he amount of loss for which the Companies may be liable shall be payable within thirty (30) days after Proof of Loss," is "received and accepted" by agreement or "an amount is determined by binding Arbitration in accordance with the provisions of this Policy."  (Doc. 7-1 at 43).  In Paragraph Y of this same section, entitled "Suit Against Companies", the parties agreed "[n]o suit, action or proceeding for the recovery of any claim under this Policy shall be sustainable in any court of law or equity *unless the Insured shall have fully complied with all the requirements of this Policy*. . ." (*Id.* at 44) (emphasis added).

In addition, the Policy contains an endorsement applicable to coverage provided by Certain Underwriters at Lloyd's London (hereinafter the "Lloyd's Endorsement").  The Lloyd's Endorsement contains both a service of suit and applicable law clause.  (Doc. 7-1 at 65).  The clauses are prefaced, at the top of the page, with the following note: "[t]his endorsement changes the Policy.  Please read it carefully."  (*Id*).   The "Service of Suit Clause (U.S.A.)" reads as follows:

> It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States.  Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.  It is further agreed that service of process in such suit may be made upon [addresses inserted] and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

(*Id.*).  The "Applicable Law (USA)" clause instructs the parties "[t]his insurance shall be subject to applicable state law to be determined by the court of competent jurisdiction as determined by the service of suit clause (USA)."  (*Id.*).

### D.   Motion to Compel Arbitration

Defendants now move to compel Plaintiff to arbitrate its dispute over the amount of insurance coverage due and stay the proceedings.  (Doc. 7).  In support of their Motion to Compel, Defendants contend: 1) the four jurisdictional prerequisites under the Convention are met, and therefore, the Court must compel arbitration; 2) the delegation clause in the arbitration agreement requires the arbitration panel to determine all threshold issue of arbitrability; 3) additionally, or in the alternative, under Alabama contract law, the service of suit clause does not supersede or conflict with the arbitration clause.  (*Id.*).

In response, Plaintiff contends no valid arbitration agreement is in force.  (Doc. 12).  More specifically, Plaintiff reiterates its allegations in the declaratory judgment action and contends the Lloyd's Endorsement, specifically the service of suit clause, changes the Policy, and renders the Arbitration Clause inoperative and unenforceable.  (*Id.*).  To bolster its point, Plaintiff provides an example of a Lloyd's Service of Suit endorsement which expressly preserved the right to arbitrate.  (*Id.*).  Plaintiff correctly points out that the Lloyd's Endorsement in the Policy at issue did not do so.  (*Id.*).  Finally, Plaintiff asserts whether there is a valid arbitration agreement should be analyzed under Alabama law governing insurance contract interpretation.  (*Id.*).

In their reply, Defendants urge the Court to find the question of whether the Arbitration Clause has been superseded by Lloyd's Endorsement to be a "gateway issue" that must be decided by the Arbitration Tribunal under the "delegation phrase" contained within the

Arbitration Clause – the same clause Plaintiff contends has been superseded by Lloyd's Endorsement. (Doc. 13). Further, Defendant argues, because Plaintiff did not challenge the delegation clause, specifically, the Court cannot entertain this challenge and must compel arbitration. (*Id.*). More concisely, Defendant argues the Court does not have jurisdiction to interpret the Policy. Therefore, the Court must determine whether it or the Arbitration Tribunal determines arbitrability.[2]

## II.    DISCUSSION

### A.    <u>Legal Standards</u>

The Federal Arbitration Act, § 2, provides that "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. ". . . [T]he basic purpose of the Federal Arbitration Act is to overcome courts' refusals to enforce agreements to arbitrate." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270 (1995) (citing *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989)). "'Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" *Perry v. Thomas*, 482 U.S. 483, 489-

---

[2] *See, discussion, infra, and MXM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 392 (3rd Cir. 2020) (citing David Horton, *Arbitration About Arbitration*, 70 Stan. L. Rev. 363, 370, 422 (2018) ("We are confronted with a 'mind-bending' question that has been dubbed 'the queen of all threshold issues' in arbitration law. Who decides—a court or an arbitrator—whether an agreement exists, when the putative agreement includes an arbitration provision empowering an arbitrator to decide whether an agreement exists?").

490 (1987) (quoting *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.*, 460 U.S. 1, 24 (1983)). "As we stated in *Keating*, 'in enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.'" *Id.* (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)). "Section 2, therefore, embodies a clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* at 90 (quoting 9 U. S. C. § 2).

If a party is "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement," it may petition a federal district court "for an order directing that such arbitration proceed in the manner provided for in the agreement." *Chambers v. Groome Transp. of Alabama*, 41 F. Supp. 3d 1327, 1334 (M.D. Ala. 2014) (citing 9 U. S. C. § 4). "In deciding a motion to compel arbitration under the Convention, courts conduct 'a very limited inquiry.'" *Cheruvoth v. SeaDream Yacht Club Inc.*, 2021 U.S. App. LEXIS 30029, *5 (11th Cir. October 6, 2021) (citing *Bautista v. Star Cruises*, 396 F.3d 1289, 1294-95 (11th Cir. 2005) (quoting *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 273 (5th Cir. 2002)).

"A district court must order arbitration unless (1) the four jurisdictional prerequisites are not met or (2) one of the Convention's affirmative defenses applies." *Cheruvoth*, 2021 U.S. App. LEXIS 30029, *5 (citing *Bautista v. Star Cruises*, 396 F.3d at 1294-95) (citations omitted). "The four prerequisites require that: '(1) there is an agreement in writing within the meaning of the New York Convention; (2) the agreement provides for arbitration in a territory of a signatory of the New York Convention; (3) the agreement arises out of a legal relationship, whether

contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.'" *Id.* (quoting *Bautista*, 396 F.3d at 1295 n. 7 (citing *Std. Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 449 (3d Cir. 2003)).

"While federal policy favors arbitration, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Redmon v. Soc'y & Corp. of Lloyds*, 434 F. Supp. 2d 1211, 1217-1218 (citing *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). When considering a motion to compel arbitration, "the district court must determine whether the parties before the court agreed to arbitrate their dispute." *Outokumpu Stainless USA, LLC v. Converteam SAS,* 902 F.3d 1316, 1325 (11th Cir. 2018) (reversed on different grounds by *GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 2020 U.S. Lexis 3029 (2020). An order compelling arbitration is "in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate." *In re Checking Account Overdraft Litigation*, 754 F.3d 1290, 1294 (11th Cir. 2014) (quoting *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785 (11th Cir. 2008) (per curiam)).

**B.    Analysis**

In support of their motion to compel arbitration, Defendants argue language in the Arbitration Clause mandates the Arbitration Panel determine all threshold issues of arbitrability – including the enforceability and validity of the arbitration agreement. (Doc. 7). In the alternative, and on the merits, Defendants cites a number of other court which have found the Lloyd's Endorsement does not supersede or conflict with the Arbitration Clause under basic rules

of contract interpretation, and, therefore, Arbitration should be enforced under the Convention. (Id.).   The Court will first address Defendant's challenge to its jurisdiction before turning to whether Lloyd's Endorsement supersedes the Arbitration Clause.

1)   **The Delegation Clause Does Not Mandate the Court to Punt/Direct the Arbitrability Question to the Arbitration Tribunal**

Paragraph C of Section VII (Conditions) of the Policy contains the following Arbitration Clause: "All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, *including its formation and validity*, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out."  (*See* Doc. 7-1 at 37) (emphasis added).  Defendants argue the phrase "including its formation and validity" within the Arbitration Clause is a delegation clause, mandating the Court refer the dispute over whether there is a binding arbitration clause to the Arbitration Tribunal.  In making this argument, Defendants rely heavily on three cases: 1) a recent Supreme Court case, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019); 2) an Eleventh Circuit case, *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017), which references the Supreme Court's holding in *Rent-A-Center, West, Inc. v. Jackson*, 561 U. S. 63 (2010); and, 3) *Ytech 180 Units Miami Beach Invs. LLC v. Certain Underwriters at Lloyd's*, 359 F. Supp. 3d 1253 (S.D. Fla. 2019), a case involving the identical insurance provisions.

Defendants argue:

Supreme Court and Eleventh Circuit precedent holds—*without exception*—that the delegation clause renders threshold issues of arbitrability—including whether an arbitration agreement is valid and/or enforceable—the exclusive province of the arbitration panel rather than the Court.  *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524, 202 L.Ed. 2d 480 (2019); *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) ("Among other things, the parties may agree to arbitrate gateway questions of arbitrability including the enforceability,

scope, applicability, and interpretation of the arbitration agreement.") (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U. S. 63, 68-70, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010)).

(Doc. 13) (emphasis added).  Defendants contend Plaintiff's "challenge to the enforcement of the Arbitration Clause's validity based on a purported conflict with the Service of Suit Clause is foreclosed by the delegation clause, which expressly commits this issue to the arbitration panel." (Doc. 7).  Defendants assert their position is consistent with *Ytech* and with federal substantive law.  (*Id*.).

These are bold statements, and they are wrong.  *Schein* considered the very narrow question of whether there is a "wholly groundless" exception to the FAA.  *See Schein,* 139 S.Ct. 524 ("The question presented in this case is whether the 'wholly groundless' exception is consistent with the Federal Arbitration Act. We conclude that it is not.").  The Supreme Court considered, even when a contract delegates the arbitrability question to an arbitrator, whether a federal court may "short-circuit the process" and decide the arbitrability question "themselves if the argument that the arbitration agreement applies to the particular dispute is 'wholly groundless.'"  *Id.* at 528.  Accordingly, *Schein* does not stand for the proposition that, as Defendants argue, "without exception" a delegation clause renders threshold issues of arbitrability – *including whether an arbitration agreement is valid and/or enforceable* – the "exclusive province of the arbitration panel rather than the court." (Doc. 13).  Indeed, *Schein* explains, "To be sure, before referring a dispute to an arbitrator, *the court determines whether a valid arbitration agreement exists.  See* 9 U. S. C. § 2.  *But if a valid agreement exists*, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the

arbitrability issue." *Id.* at 530 (emphasis added).  Under *Schein* and the FAA, the Court must first determine whether a valid arbitration agreement exists.

Similarly, *Jones v. Waffle House* does not support Defendants' position.  866 F.3d 1257 (11th Cir. 2017).  In *Jones*, the Eleventh Circuit considered who determines whether an arbitration agreement, contained within a current employment contract, could be extended to a prior-brought Fair Credit Reporting claim, and class action, in another forum between Jones and Waffle House.  Jones signed the arbitration agreement when he accepted employment at a Waffle House in Kansas; at the time, he was suing Waffle House for a fair credit reporting act violation in Florida, governed by Georgia law.  *Jones*, 866 F.3d at 1261.  Once Waffle House realized Jones was bound by the arbitration agreement, as a result of his employment, Waffle House moved to compel arbitration.  *Id.* at 1262.  ("Waffle House claimed that the agreement prevented Jones from proceeding with his Florida class-action lawsuit and that, because of the delegation provision, any threshold issues of arbitrability – including the scope of the agreement – were issues for the arbitrator, not the district court, to decide.").  Jones claimed the delegation provision was unconscionable.  *Id.* at 1265.  The district court denied the motion and Waffle House timely appealed.  *Id.* at 1262.

On appeal, the Eleventh Circuit concluded the district erred when it denied Waffle House's motion to compel arbitration against Jones' pre-employment claims and the question of whether those claims were covered by the arbitration agreement.  *Id.* at 1265-1266.  First, the Eleventh Circuit considered whether the delegation provision within the arbitration agreement was valid under Georgia law.  Next, the court considered whether the parties agreed to arbitrate gateway questions of arbitrability.  *Id.* at 1267.  In considering both questions, the Eleventh Circuit

turned to the language of the arbitration agreement between Jones and Waffle House, *the validity and existence of which was never in dispute*.  The arbitration agreement required Jones and Waffle House to "resolve by arbitration all claims and controversies ('claims'), past, present, or future, arising out of any aspect of or pertaining in any way to [Jones'] employment…that [Jones] may have against Waffle House…"  *Id*. at 1263.  The Eleventh Circuit also observed that the "arbitration agreement contain[ed] a broad, valid, and enforceable delegation provision that expresses the parties' clear and unmistakable intent to arbitrate gateway questions of arbitrability, including questions concerning the interpretation, applicability, enforceability, and formation of the agreement."[3]  *Id*. at 1262.

The Eleventh Circuit, relying heavily on *Rent-A-Center*, explained how parties may delegate gateway issues of arbitrability within a "delegation provision," a type of "antecedent agreement."  *Id*. at 1264 (citing *Rent-A-Center*, 561 U.S. at 68).  The Eleventh Circuit explained, further, when "an arbitration agreement contains a delegation provision – committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable – the courts only retain jurisdiction to review a challenge to that specific provision."  *Id*. at 1264 (citing *Parnell v. CashCall, Inc*., 804 F.3d 1142, 1144 (11th Cir. 2015)).  Under *Rent-A-Center's* "severability rule," a court may only review the enforceability of the arbitration agreement as a whole once it determines that "the delegation clause is itself invalid or unenforceable."  *Id*. at 1264 (quoting *Parm v. Nat'l Bank of Cal., N.A.,* 835 F.3d 1331, 1335 (11th Cir. 2016)).  The

---

[3] The delegation provision read as follows:  "The Arbitrator, and not any federal, state, or local court or agency, shall have authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable."  *Waffle House, Inc*., 866 F.3d at 1263.

Eleventh Circuit then, applying Georgia law, determined the delegation provision was neither substantively nor procedurally unconscionable. *Jones*, 866 F.3d at 1266.

Next, the Eleventh Circuit considered whether the delegation provision "manifested a clear and unmistakable intent to arbitrate gateway issues." *Id.* at 1267. In doing so, the Eleventh Circuit analyzed the language of the provision and found that it committed to the arbitrator the power to resolve any dispute, including the applicability of the arbitration clause to Jones' FCRA claims. *Id.* at 1267. In an effort to avoid the breadth of the delegation provision, Jones argued "the district court should recognize the wholly groundless exception and decide gateway issues and 'not delegate questions implicating is managerial discretion regarding the conduct of class actions.'" *Id.* at 1264. The Eleventh Circuit addressed this argument, as well, and declined to adopt the wholly groundless exception, now also rejected by the Supreme Court in *Schein*. *Id.* at 1269-1271. The Eleventh Circuit again returned to the language of the delegation provision:

> In the face of the parties' agreement to arbitrate gateway issues concerning the interpretation, applicability, enforceability, and formation of the arbitration agreement at issue, the district court was not free to pass judgment on the wisdom or efficacy of the provision in the first instance and should have compelled arbitration. Thus, we need not examine whether Waffle House's arguments are wholly groundless and we conclude that all gateway issues of arbitrability must be sent to arbitration.

*Id.* at 1271.

As can be surmised from the above summary, the current dispute is quite different. Here, Plaintiff argues Lloyd's Endorsement negates the Arbitration Clause; it does not argue, as Jones did, that the Arbitration Clause is not applicable to the dispute. In *Jones*, then, the fundamental question was whether the delegation provision, contained within the arbitration agreement in place between Jones and Waffle House, required the court to submit the question of whether

the arbitration agreement extended to Jones' FCRA claims to the arbitrator.   Here, the fundamental question is whether the arbitration agreement remains in force, given the language of Lloyd's Endorsement.  This language instructs the parties that the endorsement "changes the policy" and "in the event of a failure of the Defendants to pay any amount claimed to be due, [Defendants] will submit to the jurisdiction of a court within the United States."  (Doc. 1-2).  To add to the confusion, Lloyd's Endorsement does not reference the Arbitration Clause contained within the Policy.  Defendants, relying on *Jones,* contend the delegation phrase contained within the challenged Arbitration Clause "forecloses" the Court's ability to analyze this conflict and that it must be submitted to the Arbitration Tribunal.  (Docs. 7 and 13).  However, Defendants miss the distinguishing factor between this case and *Jones*.  In *Jones*, the existence of the arbitration agreement, and the delegation provision therein, was not in dispute; here, it is.  For this reason, the Court will not apply *Jones*.

Next, Defendants argue, under the severability rule found in *Rent-a-Center*, and discussed in *Jones*, the Court must deny Plaintiff's challenge to the Arbitration Clause because Plaintiff did not directly challenge the delegation phrase.  Admittedly, the Defendants' position finds support in *Ytech*, which the Defendants urge this Court to follow.  *Ytech* considered whether a court could untangle the conflicts between an arbitration clause in an insurance policy, employing identical terms as the Arbitration Clause herein, and a similar endorsement.  359 F. Supp. 3d 1253.  There, the court concluded the delegation phrase "commit[ed] to the arbitrator the power to determine issues of arbitrability, including its validity and enforceability."  *Id*. at 1266.  The court rejected plaintiff's argument that no delegation clause existed, and therefore was not severable from the arbitration clause (even though the phrase sits within the arbitration clause).  *Id.*  The court found

that plaintiff failed to meet the *Rent-A-Center* pleading standard because it did not challenge the delegation clause specifically when it challenged the arbitration clause, containing the delegation clause. *Id*.

The Court declines to apply *Ytech* in this case for the same reasons it declines to apply *Jones.* The severability rule in *Rent-A-Center* is only employed when there is a valid arbitration agreement. To be clear, under *Rent-A-Center*, courts retain jurisdiction to consider challenges to the delegation provision only when the arbitration agreement itself is valid and enforceable. *See Rent-A-Center*, 561 U.S. 63 at 71 ("But that agreements to arbitrate are severable does not mean that they are unassailable. If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4."). Accordingly, the severability rule pertaining to delegation provisions (found in *Rent-A-Center* and relied on in *Jones* and *Ytech*) are not applicable to the issue before this Court.

More recently, the Third Circuit addressed whether the court or the arbitrator determines whether an arbitration agreement exists when the challenged agreement contains a clause delegating that very decision to the arbitrator. *See MXM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386 (3rd Cir. 2020). The Third Circuit explained: "This seemingly circular and esoteric inquiry implicates important concerns, from the more specific question of whether the parties' bargained-for forum is being enforced to broader questions about the allocation of powers between judges and arbitrators." *Id.*

In *MXM Construction Company*, the question was whether a 2018 collection dispute between the parties should be arbitrated based on an unsigned 2002 Collective Bargaining

Agreement ("CBA").  The 2002 CBA contained an arbitration clause requiring the parties to arbitrate "questions or grievances involving the interpretation and application of this Agreement." *Id.* at 393.  The arbitration clause included the following delegation provision: "The Arbitrator shall have the authority to decide whether an Agreement exists, where that is in dispute." *Id.*

The defendant moved to dismiss the complaint and refer MXM's fraud-in-the-execution claim to the arbitrator, along with the underlying collection dispute, in accordance with the 2002 CBA's arbitration provision.  *Id*. at 394.  The district court framed the issue as follows: "The task before us . . . is to figure out whether this [dispute] stays here or goes to the arbitrator." *Id.*  The district court determined more discovery was needed to determine whether there was a valid arbitration agreement in existence between the parties.  *Id.* at 394.  Ultimately, the district court denied the motion to compel because "there were still 'several disputed facts that suggest that the parties did not intend to incorporate the CBA.'" *Id*. at 395.  The district court, in refusing to compel arbitration, relied on "the presumption that issues of arbitrability are for the court to decide and that to 'overcome this presumption, an arbitration clause must contain clear and unmistakable evidence that the parties agreed to arbitrate.'" *Id.*  The district court determined it need not "empower" the arbitrator to decide whether an agreement exists when "a party legitimately disputes whether it ever saw, heard about, or agreed to a CBA at all. . . " *Id*.

On appeal, the Third Circuit couched the jurisdictional question as follows:  "whether the District Court has the power to resolve questions about the formation or existence of a contract when the putative contract includes a provision delegating 'the authority to decide whether an

Agreement exists' to the arbitrator. JA97 (20 02 CBA, art. 21.20(c))." *Id.* at 396.  The Third Circuit

acknowledged they had answered a similar question in 2000:

> So, who decides whether an arbitration agreement exists when the formation or
> the existence of the container contract is disputed—the court or the arbitrator?
>
> We answered that question in *Sandvik*. There, we turned to section 4 of the FAA,
> which provides that a federal court must compel arbitration 'upon being satisfied
> that the making of the agreement for arbitration . . . is not in issue,' 9 U.S.C. § 4,
> and we held that this provision 'affirmatively requires' a court to decide questions
> about the formation or existence of an arbitration agreement, namely the
> element of mutual assent. *Sandvik*, 220 F.3d at 108-09. . . .We explained that this
> threshold determination is 'a necessary prerequisite' in fulfilling the court's
> gatekeeping function.  *Id.* at 107.  Otherwise, arbitrators would be allowed 'to
> determine their own jurisdiction, something that is not permitted in the federal
> jurisprudence of arbitration[.]' *Id.* at 111.

*Id*. at 397-398.  The Third Circuit explained its position was "[c]onsistent with the Supreme Court's

repeated admonition that, at its core, 'arbitration is a matter of contract,' *Rent-A-Center*, 561

U.S. at 67, 69," and the "the text of section 4 of the FAA—mandating that the court be 'satisfied'

that an arbitration agreement exists." *Id.* at 401.  The Third Circuit determined this principle "tilts

the scale in favor of a judicial forum when a party rightfully resists arbitration on grounds that it

never agreed to arbitrate at all." *Id.*  Pertinent to the dispute before this Court, the Third Circuit

observed, "[I]ndeed, it can hardly be said that contracting parties clearly and unmistakably

agreed to have an arbitrator decide the existence of an arbitration agreement when one of the

parties has put the existence of that very agreement in dispute." *Id.*  (citing *Rent-A-Center*, 561

U.S. at 69 n.1 (noting that the "'clear and unmistakable' requirement . . . pertains to the parties'

*manifestation of intent*") (citation omitted))."

Though the Eleventh Circuit has not yet addressed this issue directly, the Third Circuit

cited cases from "several sister circuits" reaching the same conclusion. *Id.* at 104-402 (citing *VIP,*

*Inc. v. KYB Corp.*, 951 F.3d 377, 385-86 (6th Cir. 2020); *Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.*, 944

F.3d 225, 234 (4th Cir. 2019); *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 515 (5th Cir.

2019); *Nebraska Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 741 & n.2 (8th Cir. 2014)).  The

Third Circuit concluded:

> In brief, we reaffirm our decision in *Sandvik* and hold that, unless the parties clearly and unmistakably agreed to arbitrate questions of contract formation in a contract whose formation is not in issue, those gateway questions are for the courts to decide.

*Id*. at 402.

The Court finds the Third Circuit's reasoning persuasive and applicable to the issue before

it.  Here, Plaintiff argues the Lloyd's Endorsement superseded the arbitration clause; therefore,

Plaintiff has put the very existence of the arbitration clause in issue, which is a question for the

Court.  Because this case is distinguished from *Jones,* where the arbitration agreement was not

in dispute, and for the reasons set out by the Third Circuit in *MXM*, the Court will not delegate

the question of whether there is a valid arbitration agreement in place between the parties to

the Arbitration Tribunal.  The Court, instead, retains jurisdiction of this threshold question.

### 2)   A Valid Arbitration Clause Exists Between the Parties Because It Is Not Superseded by Lloyd's Endorsement

Plaintiff argues there is no written arbitration agreement between the parties because

the Service of Suit Clause within Lloyd's Endorsement supersedes the mandatory Arbitration

Clause on its face.  (Doc. 12).  As Plaintiff points out, to resolve this issue, we apply Alabama law

governing contract interpretation.  (Doc. 12) ("[t]he issue of whether the parties agreed to

arbitrate their disputes" is determined by "ordinary state-law principles that govern the

formation of contracts."  (quoting *Chicago v. Kaplan*, 514 U.S. 938, 944 (1995)).

Under Alabama law, "[a] contract of insurance, like other contacts, is governed by the general rules of contracts." *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.,* 817 So. 2d 687, 691-692 (Ala. 2001) (citing *Pate v. Rollison Logging Equip., Inc.*, 628 So.2d 337 (Ala. 1993)). "Insurance contracts, like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions." *Id.* (quoting *Attorneys Ins. Mut. of Alabama, Inc. v. Smith, Blocker & Lowther, P.C.*, 703 So.2d 866, 870 (Ala. 1996)). "Terms of a written instrument should be construed *in pari materia* and a construction adopted that gives effect to all terms used. Inconsistent parts in a contract are to be reconciled, if susceptible of reconciliation . . .." *Advance Tank & Constr. Co. v. Gulf Coast Asphalt Co.*, L.L.C., 968 So.2d 520, 526 (Ala. 2006) (quoting *Sullivan, Long & Hagerty v. Southern Elec. Generating Co.*, 667 So.2d 722, 725 (Ala. 1995) (citation omitted)). "The law is settled that this Court is bound to construe contracts so as to give meaning to all provisions whenever possible." *Id.* (quoting *Board of Water & Sewer Comm'rs of City of Mobile v. Bill Harbert Constr. Co.*, 870 So.2d 699, 710 (Ala. 2003)).

Likewise, determining whether to enforce an arbitration provision between parties is a matter of contract interpretation. *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1114 (11th Cir.2001) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). "For agreements that fall within the scope of the FAA, 'state law generally governs whether an enforceable contract or agreement to arbitrate exists.'" *Griggs v. Kenworth of Montgomery, Inc.*, 775 F. App'x 608, 612 (11th Cir. 2019) (quoting *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368) (11th Cir. 2005). "A court can decline to enforce an arbitration agreement under the FAA only if the plaintiffs can point to a generally applicable

principle of contract law under which the agreement could be revoked." *Caley*, 428 F.3d at 1371

(citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 627 (1985)).

Applying these principles to the insurance contract at issue here, the Court reads the

Arbitration Clause within the Policy and Lloyd's Endorsement as compatible.  Paragraph C of

Section IV, entitled "Arbitration Clause," requires "all matters in difference" to be referred to

arbitration.  (Doc. 7-1).  Thereafter, under Paragraph Y ("Suit against Companies") the Insured

may proceed to a suit in a court of law or equity, after having fully complied with all the

requirements of this Policy (i.e. arbitration).  (Doc. 7-1).  The Lloyd's Endorsement clarifies that

the Companies will submit to the jurisdiction within the United States, and, here, the law of

Alabama.  *Id.*

The Court acknowledges, as Plaintiff argues, the Lloyd's Endorsement could have been

drafted more clearly in order to specifically preserve the requirement to arbitrate.  On the other

hand, Lloyd's Endorsement does not specifically refute the arbitration requirement, either.

Therefore, the sole manner in which to reconcile the clauses is to read them together, as several

other courts have done, and find the Policy mandates the Insured participates in arbitration, per

the Arbitration Clause.  Thereafter, the Lloyd's Endorsement, specifically the Service of Suit

Clause, ensures the Insurer will submit to jurisdiction in the United States if court action is

necessary to either compel arbitration or enforce an arbitration award.  The Court finds support

for its position in several cases which have considered similar insurance provisions.  *See

Physicians Group, LLC v. Certain Underwriters at Lloyd's London Subscribing to Policy No. 458898*,

2013 U.S. Dist. LEXIS 202899, *4 (M.D. Fla. Aug. 8, 2013) ("Many courts have confronted the issue

of 'conflicting' arbitration clauses and service of suit clauses and have consistently read the two

clauses as compatible.  Courts treat the service of suit clauses as resolving the issue of personal jurisdiction for purposes of an arbitration award.") (collecting cases); *see also 1010 Common, LLC v. Certain Underwriters at Lloyd's, London*, 2020 U.S. Dist. LEXIS 233867, *27-29 (E.D. La. December 9, 2020) ("To summarize, the service of suit clause permits a party seeking to enforce an arbitration award that Underwriters failed to pay in any court of competent jurisdiction" even when "per plaintiff's position, this broad endorsement provision granting a court of competent jurisdiction the authority to resolve *any* dispute arising from the Policy conflicts with the arbitration agreement and in turn renders the policy void and inapplicable."); *Gemini Ins. Co. v. Certain Underwriters at Lloyd's London*, 2017 U.S. Dist. LEXIS 56583, at *7 (S.D. Tex. April 13, 2017) ("'the best way to harmonize' the two provisions was not to treat the Service of Suit provision as a general carveout from the 'Law and Practice' provision; rather, the former provision only narrowly applied to suits to compel the other party to pay an arbitration award"); *see also Century Indem. Co. v. Certain Underwriters at Lloyds, London*, 584 F.3d 513, 554 (3rd Cir. 2009) ("service-of-suit clauses do not negate accompanying arbitration clauses; indeed, they may complement arbitration clauses by establishing a judicial forum in which a party may enforce arbitration.").

## III.    CONCLUSION

The foregoing having been considered, the Court finds the Arbitration Clause has not been superseded by Lloyd's Endorsement and remains in place and GRANTS Defendants' Motion to Compel Arbitration and ORDERS that the parties proceed to arbitration regarding the claims in the Complaint.  Having granted Defendants' motion, this Court retains jurisdiction to confirm or vacate the resulting arbitration award under 9 U.S.C. §§ 9-10.  *See Campbell v. Pilot Catastrophe*

*Servs., Inc.*, 2010 U.S. Dist. LEXIS 85173, at *27 (S.D. Ala. Aug. 19, 2010) ("Where a plaintiff initiates litigation without satisfying arbitration requirements, courts routinely stay rather than dismiss the mechanism."). The Court STAYS this action pending the outcome of arbitration. Defendants are ORDERED to file and serve a written status report reflecting the status of the arbitration proceedings by November 15, 2022. Additional status reports shall be filed every three months thereafter until this matter is resolved.

**DONE and ORDERED** this 15th day of June, 2022.

/s/ JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE